**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                      )
EVERQUOTE, INC., f/k/a ADHARMONICS,    )          No. 1:16-cv-10103
INC.,                                                )
                                                      )
                              Plaintiff,             )
                                                      )
                  v.                                  )
                                                      )
UNDERGROUND ELEPHANT, INC.,               )
                                                      )
                              Defendant.             )
_____)
                                                      )
UNDERGROUND ELEPHANT, INC.,               )
                                                      )
                              Counter-claimant,      )
                                                      )
                  v.                                  )
                                                      )
EVERQUOTE, INC., f/k/a ADHARMONICS,    )
INC.,                                                )
                              Counter-defendant.     )
_____)


**UNDERGROUND ELEPHANT, INC.'S**
**ANSWER AND COUNTERCLAIM**

**ANSWER**

In response to plaintiff EverQuote, Inc., f/k/a AdHarmonics, Inc.'s ("AdHarmonics") complaint,

defendant Underground Elephant, Inc. ("UE") admits, denies, and avers as follows:

**PARTIES**

1.      UE lacks information or knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 1 and on that basis, denies them.

2.      Admitted.

**JURISDICTION AND VENUE**

3.　　The allegations in paragraph 3 are legal conclusions and do not require a response.　To the extent a response is required, UE denies the allegations in paragraph 3.

4.　　The allegations in paragraph 4 are legal conclusions and do not require a response.　To the extent a response is required, UE denies the allegations in paragraph 4.

**FACTS**

5.　　UE admits that on or about November 18, 2014, it entered into a Lead Data License Agreement with AdHarmonics ("November 2014 Agreement").　UE denies the allegations of paragraph 5 that are not expressly admitted herein.

6.　　The allegations in paragraph 6 are legal conclusions and do not require a response.　To the extent a response is required, UE denies the allegations in paragraph 6.

7.　　The allegations in paragraph 7 are legal conclusions and do not require a response.　To the extent a response is required, UE admits that AdHarmonics provided leads to UE, but denies that AdHarmonics performed under the November 2014 Agreement.　To the extent a response is required, UE denies the allegations in paragraph 7.

8.　　UE admits that AdHarmonics sent it invoices, but denies that those invoices were sent "at the end of every month."

9.　　Admitted.

10.　　UE admits that it did not pay AdHarmonics a portion of the invoice AdHarmonics sent for June 2015, but denies that it was obligated to pay the full invoiced amount.

11.　　UE admits that an invoice dated October 20, 2015, is attached as Exhibit A to the complaint, but denies that it is obligated to pay the invoice.

12.　　UE admits that it did not pay the invoices for September and October 2015, but denies that it is obligated to do so or that there are any "outstanding balances."

13.     UE admits that an invoice dated September 30, 2015, and a document entitled Credit Memo dated October 16, 2015 are attached as Exhibit B to the complaint, but denies that it is obligated to pay the invoice.

14.     UE admits that an invoice dated October 31, 2015, and a document entitled Credit Memo dated November 13, 2015 are attached as Exhibit C to the complaint, but denies that it is obligated to pay the invoice.

15.     Denied.

16.     Denied.

17.     Denied.

## COUNT ONE

### (Breach of Contract)

18.     UE hereby incorporates as through fully set forth herein its answers to paragraphs 1 through 17.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

## PRAYER FOR RELIEF

This section of the complaint constitutes a prayer for relief to which a response is not required. To the extent that this section may be deemed to allege any facts or any factual or legal entitlements to the relief requested, UE denies each and every such allegation.   Specifically, UE denies that AdHarmonics is entitled to any of the requested relief.

## GENERAL DENIAL

UE denies all allegations not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

### (Failure to State a Claim)

1. The complaint, and each and every claim alleged therein, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

### (Unclean Hands)

2. AdHarmonics is not entitled to relief to the extent it has unclean hands.

### Third Affirmative Defense

### (Laches, Waiver, and/or Estoppel)

3. By reason of AdHarmonics' own conduct, statements, acts, and omissions, the equitable doctrines of laches, waiver, and/or estoppel bar its claims for relief.

### Fourth Affirmative Defense

### (Indefiniteness)

4. The complaint and each cause of action alleged therein are barred on the ground that the terms of the alleged contracts are too indefinite to be enforced.

### Fifth Affirmative Defense

### (Nonperformance)

5. The complaint and each cause of action alleged therein are barred on the grounds that AdHarmonics failed to fulfill its obligations under the contract.

### Sixth Affirmative Defense

### (Fraud in the Inducement)

6. The complaint is barred on the ground that AdHarmonics fraudulently induced UE into entering into the contract, and UE would not have entered into the contract but for AdHarmonics'

fraudulent inducement.

## Seventh Affirmative Defense

### (Mitigation)

7.      AdHarmonics has failed, and continues to fail, to act reasonably to mitigate the damages alleged in the complaint.

## Eighth Affirmative Defense

### (Lack of Agreement)

8.      The complaint is barred on the grounds that the alleged contract was not the product of a meeting of the minds.

## Ninth Affirmative Defense

### (Unconscionability)

9.      The complaint is barred on the ground that the alleged contract is unconscionable because it is a contract of adhesion.

## Tenth Affirmative Defense

### (No Damage or Loss)

10.     UE is informed and believed, and based thereon alleges, that AdHarmonics has not sustained any losses, damages, or detriment in any sum or amount whatsoever as a result of any alleged acts, omissions, fault, fraud, carelessness, recklessness, negligence, or other breach of duty on the part of UE or its officers, directors, employees, agents, or servants.

## Eleventh Affirmative Defense

### (Latent Ambiguity)

11.     The complaint is barred on the ground that the alleged contract contains a material latent ambiguity, not obvious to UE at the time the contract was entered into.

**Twelfth Affirmative Defense**

**(Plaintiff's Breach)**

12.     The complaint is barred by virtue of AdHarmonics' own breach of the contract.

**Thirteenth Affirmative Defense**

**(Additional Defenses)**

13.     UE alleges that it may have additional affirmative defenses that cannot be articulated at this time due to AdHarmonics' failure to particularize its claims and due to the vague and ambiguous nature of the complaint.  Accordingly, UE reserves the right to amend its answer, including, without limitation, by adding separate and affirmative defenses, after discovery and further investigation and in preparation for trial.

**PRAYER**

UE prays for relief as follows:

1.     That plaintiff take nothing and that the complaint be dismissed in its entirety with prejudice;

2.     That the Court enter judgment in UE's favor;

3.     That the Court award UE its attorneys' fees and costs in defending this action; and

4.     That the Court grant such other and further relief as it may deem proper.

## COUNTERCLAIM

1.     Through this counterclaim, defendant and counter-claimant UE seeks to recover damages resulting from plaintiff and counter-defendant AdHarmonics' fraudulent and deceptive business practices including, but not limited to, AdHarmonics' operation of its online advertising system. AdHarmonics' wrongful conduct, which was concealed from discovery by fraud, has resulted in damages to UE potentially in excess of $1,027,186.99 and warrants an award of punitive damages.

## I.     THE PARTIES

2.     Defendant and counter-claimant UE is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Diego, California.  UE is a global performance-based marketing technology company that focuses on improving its clients' online customer acquisition programs through sophisticated mathematics, proprietary optimization, and automation technology.  UE's proprietary Marketing Delivery Platform enables it to customize each and every interaction to produce the results that clients need to increase their return on investment on customer acquisition campaigns.  With audience-specific creatives, websites, and a full circle enterprise class analytics platform, UE is able to obtain results superior to its competitors.

3.     Plaintiff and counter-defendant AdHarmonics is a Delaware corporation with its principal place of business in Cambridge, Massachusetts.

## II.     JURISDICTION AND VENUE

4.     The Court has jurisdiction over this counterclaim under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5.     UE's counterclaims arise out of the same transaction or occurrence that is the subject matter of AdHarmonics' complaint.  As a result, the Court has jurisdiction over the counterclaims under Rule 13 of the Federal Rules of Civil Procedure.

### III.   FACTUAL BACKGROUND

**A.   Underground Elephant's Business Model**

6.      UE is a global performance-based marketing technology company that specializes in customer acquisition solutions in a wide range of vertical markets.  UE is unique from other agencies or lead generation companies that simply run brand-based advertisements or aggregate leads from multiple providers that target a wide-range of customers.  UE uses proprietary internal properties that target and identify consumers specifically interested in each client's service and sends those customers directly to UE clients.  UE's marketing process optimizes clients' return on investment across the full sales and marketing cycle.

7.      UE's proprietary process allows UE to target interested consumers and either provide its clients with "inquiry specific" information regarding those interested consumers or send those interested consumers directly to UE clients' web property in the form of a click.  UE can also connect interested consumers directly to its clients through phone numbers on UE web properties and targeted searches on mobile phones.

8.      In order to deliver the advertisements to online consumers, UE utilizes the platforms of selected advertising delivery companies, including AdHarmonics.

**C.   Underground Elephant's Contracts with AdHarmonics**

9.      UE had a number of concerns before entering into a contract to use AdHarmonics' services.

10.      For example, UE was concerned with maintaining its reputation in the marketplace and providing its customers with the best connections to consumers.  Consistent with this concern, UE relied on AdHarmonics' representations about the effectiveness of its services and its compliance with industry standards and the law.

11.     Beginning in January 2014, AdHarmonics represented to UE that it did not incentivize leads, obtain leads through rewards programs, or provide duplicate leads.  AdHarmonics further represented that it complied with best practices in the online lead industry and all applicable laws, including the CAN-SPAM Act and the TCPA.  AdHarmonics continually represented to UE that it would provide UE with high quality leads, which UE could then provide to its customers.  UE is informed and believes and based thereon alleges that at the time AdHarmonics made these representations, AdHarmonics knew or should have known that the representations were false.  AdHarmonics made these representations with the intent to induce UE into entering into a contract with AdHarmonics.

12.     Based on AdHarmonics' representations, which were made in or about January 2014, UE agreed to enter into a contract with AdHarmonics.

13.     On or about January 23, 2014, UE entered into a Lead Vendor Agreement with AdHarmonics ("January 2014 Agreement"), pursuant to which AdHarmonics collected and compiled, and UE licensed, certain information about consumers who had expressed interest in obtaining insurance products ("Leads").  The January 2014 Agreement provides that UE could return Leads to AdHarmonics "at any time due to fraud or intentional misconduct."

14.     In the January 2014 Agreement, AdHarmonics agreed that:

a.  It would "take no affirmative steps, nor by omission, act to dilute the value or quality of Leads referred or insurance lead sources being provided to UE under this Agreement;"

b.  "[N]o incentivized or coregistration Leads are permitted hereunder, and no compensation shall be paid to [AdHarmonics] for any such Leads;"

c.  "The Lead will not be obtained in connection with a reward program pursuant to which the individual was offered consideration, including without limitation, points, rewards, chances to win, or eligibility to win, a prize or a contest, or monetary gain, for submitting information contained in the Lead;" and that

d.  "The Leads will not include Leads from remarketing programs or individuals who previously submitted a request for an insurance quote within 30 days from the date

such Lead was provided hereunder and did not provide explicit permission to resubmit their information for additional insurance quotes."

15.     On or about November 18, 2014, at AdHarmonics' insistence, UE and AdHarmonics entered into the November 2014 Agreement.   Importantly, the November 2014 Agreement did not terminate the January 2014 Agreement.

16.     In the November 2014 Agreement, AdHarmonics agreed that it "will not offer any payment, rebate, discount or other monetary incentive to complete a lead form or otherwise attempt to artificially increase fees owed to AdHarmonics by [UE]."

**D.     AdHarmonics' Fraud**

17.     In late 2015, UE learned that AdHarmonics' representations to UE were false and that AdHarmonics never intended to comply with the January 2014 Agreement and the November 2014 Agreement (collectively, the "Agreements").   Contrary to their representations and the express terms of the Agreements, in 2015 AdHarmonics provided a substantial number of duplicate leads to UE.   In fact, the percentage of duplicate leads increased from 0.27% in February 2015 to almost 20% in October 2015.   UE discovered that AdHarmonics' entire business offering was a sham.

18.     Second, UE learned that the lead data provided by AdHarmonics was incentivized. AdHarmonics admitted to UE that at least 3% of its lead data was incentivized, but other third-party software reports that the percentage of incentivized traffic to AdHarmonics' website is 69%. Incentivized leads have little value in the industry, which AdHarmonics well knows.

19.     Third, a significant number of leads AdHarmonics provided did not meet UE's filters because the consumer disputed the information provided in the lead or the leads did not have valid contact information.   In these cases, either the consumer provided false information or AdHarmonics, itself, falsified the information.   These errors were not discovered until the agent calling the consumer learned of the false information and reported it back to UE.   AdHarmonics recently rejected UE's attempts to return these leads.   Moreover, providing false leads substantially damages UE's reputation

with its customers and prospective customers.

20.     Fourth, a significant number of leads were provided to UE where the consumer reported that they did not request to be contacted.  In other cases, consumers reported to the agents that they were already insured by the same company.  These leads are likely the result of re-marketing or incentivizing traffic in violation of the Agreements. As with leads that have incorrect information, UE did not learn that these consumers did not want to be contacted and, therefore, were false leads, until hearing back from the agents, thereby further damaging UE's reputation and client relationships.

21.     Fifth, AdHarmonics' email patterns are suspect.  For example, Gmail is one of the most popular email services on the internet with Gmail making up approximately half of normal traffic. AdHarmonics' leads, however, show Gmail making up less than 6% of the duplicate traffic with Yahoo! making up almost 50%.  The only explanation for this variance is that AdHarmonics is fraudulently re-marketing to Yahoo! email addresses.

22.     UE reported these illegal business practices to AdHarmonics, but AdHarmonics refused to credit UE for the falsified lead data or explain any justification for its deceptive practices.

## FIRST CLAIM FOR RELIEF

## BREACH OF THE JANUARY 2014 AGREEMENT

23.     UE realleges and incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

24.     On or about January 23, 2014, UE and AdHarmonics entered into the January 2014 Agreement.

25.     Under the January 2014 Agreement, AdHarmonics agreed to license Leads to UE in compliance with the terms and conditions of the agreement.

26.     UE is informed and believes and based thereon alleges that AdHarmonics breached the January 2014 Agreement as a result of the conduct alleged herein.

27.     UE has performed all of the terms and conditions required to be performed under the January 2014 Agreement and/or is otherwise excused from performance because of the conduct of AdHarmonics or others.

28.     As a direct and proximate result of AdHarmonics' breach of the January 2014 Agreement, UE has been damaged in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**BREACH OF THE NOVEMBER 2014 AGREEMENT**

29.     UE realleges and incorporates by reference paragraphs 1 through 28 as though fully set forth herein.

30.     On or about November 18, 2014, UE and AdHarmonics entered into the November 2014 Agreement.

31.     Under the November 2014 Agreement, AdHarmonics agreed to license Leads to UE in compliance with the terms and conditions of the agreement.

32.     UE is informed and believes and based thereon alleges that AdHarmonics breached the November 2014 Agreement as a result of the conduct alleged herein.

33.     UE has performed all of the terms and conditions required to be performed under the November 2014 Agreement and/or is otherwise excused from performance because of the conduct of AdHarmonics or others.

34.     As a direct and proximate result of AdHarmonics' breach of the November 2014 Agreement, UE has been damaged in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

35.     UE realleges and incorporates by reference paragraphs 1 through 34 as though fully set

forth herein.

36.     Under the Agreements, AdHarmonics agreed to license Leads to UE subject to the terms and conditions of the Agreements.

37.     The Agreements contain an implied covenant of good faith and fair dealing that obligated AdHarmonics to perform the terms and conditions of the Agreements fairly and in good faith and to refrain from doing any act that would prevent or impede UE from receiving the benefits of the Agreements.

38.     UE has performed all of the terms and conditions required to be performed under the Agreements and/or is otherwise excused from performance because of the conduct of AdHarmonics or others.

39.     By delivering Leads in violation of the Agreements, AdHarmonics unfairly interfered with UE's right to receive the benefits of the Agreements.  Also, by deploying its services in a manner materially different from the way in which it was represented to UE, AdHarmonics unfairly interfered with UE's right to receive the benefits of the Agreements.

40.     As a direct and proximate result of AdHarmonics' conduct as alleged herein, UE has been damaged in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

## (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

41.     UE realleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42.     The acts of AdHarmonics as alleged above constitute a pattern and/or course of conduct which is unlawful and/or unfair and therefore constitutes an unfair business practice in violation of California Business and Professions Code Section 17200 *et seq*.  Such acts and omissions further

constitute unfair competition under California statutory and common laws.

43.     Under the terms of Business and Professions Code section 17200, *et seq.*, any business practice that violates a civil, criminal, state, federal, municipal, or court-made law is actionable as unfair competition.  In addition, any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or is substantially injurious to consumers is actionable as unfair competition.

44.     Section 17200 creates a statutory basis upon which a lawsuit may be brought to obtain an injunction or other equitable relief where there has been an act involving "unfair competition."  The term "unfair competition" as defined by section 17200 includes any unlawful, unfair, or fraudulent business act or practice and any unfair, deceptive, untrue, or misleading advertising.

45.     AdHarmonics has engaged in and/or is continuing to engage in acts and/or practices of unfair competition and/or unlawful, unjust, or unfair business practices.

46.     UE has sued to remedy the unfairly competitive acts and unfair business practices noted above that were and continue to be undertaken by AdHarmonics.  In addition to other remedies, UE is entitled to temporary, preliminary and permanent injunctive relief under California Business and Professions Code section 17203 to enjoin and to restrain AdHarmonics from engaging in unlawful, unfair, or deceptive business practices and unfair competition including an order restraining, enjoining, and prohibiting AdHarmonics, its agents, servants, employees, and all persons acting under, for, and/or in concert with them from engaging in the improper, unlawful, and deceptive acts of unfair competition noted above.

47.     Plaintiff UE also seeks restitution, including disgorgement of AdHarmonics' profits, under California Business and Professions Code section 17203.

## FIFTH CLAIM FOR RELIEF

## VIOLATION OF MASSACHUSETTS' UNFAIR COMPETITION LAW

## (MASS. G.L. C 93A)

48.     UE realleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49.     The acts of AdHarmonics as alleged above constitute a pattern and/or course of conduct which is unlawful and/or unfair and therefore constitutes an unfair method of competition and/or unfair or deceptive act or practice in violation of Massachusetts General Law chapter 93A.  Such acts and omissions further constitute unfair competition under Massachusetts statutory and common laws.

50.     Chapter 93A creates a statutory basis upon which a lawsuit may be brought to obtain an injunction or other equitable relief where there has been an act involving unfair competition.

51.     AdHarmonics has engaged in and/or is continuing to engage in acts and/or practices of unfair competition and/or unlawful, unjust, or unfair business practices.

52.     UE has sued to remedy the unfairly competitive acts and unfair business practices noted above that were and continue to be undertaken by AdHarmonics.  In addition to other remedies, UE is entitled to temporary, preliminary and permanent injunctive relief to enjoin and to restrain AdHarmonics from engaging in unlawful, unfair, or deceptive business practices and unfair competition including an order restraining, enjoining, and prohibiting AdHarmonics, its agents, servants, employees, and all persons acting under, for, and/or in concert with them from engaging in the improper, unlawful, and deceptive acts of unfair competition noted above.

53.     Plaintiff UE also seeks damages, including restitution and disgorgement of AdHarmonics' profits.

## SIXTH CLAIM FOR RELIEF

## PROMISSORY FRAUD

54.     UE realleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.     Prior to and at the time of entering into the Agreements, AdHarmonics represented to UE that its services worked materially different from how they actually work.  These representations were made in or about January 2014.

56.     After entering into the Agreements, AdHarmonics continued to represent that its services were materially different from how they actually work.

57.     When AdHarmonics made these representations, it had no intention of performing consistent with them.

58.     AdHarmonics made these representations with the intent to induce UE to enter into the Agreements, and in reliance upon those promises, UE entered into the Agreements with AdHarmonics. AdHarmonics made these subsequent representations with the intent to induce UE not to terminate the Agreements and to provide AdHarmonics with additional business, and in reliance upon those promises, UE did not terminate the Agreements.

59.     As a result of AdHarmonics' conduct, AdHarmonics proximately caused damages to UE in an amount to be determined at trial but in excess of this Court's jurisdictional limits.

60.     AdHarmonics' conduct was willful, malicious, fraudulent, and/or oppressive.  Accordingly, UE also seeks an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

61.     UE realleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62.     Prior to and at the time of entering into the Agreements, AdHarmonics represented to UE that its services worked materially different from how they actually work.  These representations were made in or about January 2014.

63.     After entering into the Agreements, AdHarmonics continued to represent that its services were materially different from how they actually work.

64.     AdHarmonics made these representations without reasonable grounds to believe that they were true.

65.     AdHarmonics made these promises with the intent to induce UE to enter into the Agreements, and in reliance upon those promises, UE entered into the Agreements with AdHarmonics. AdHarmonics made these subsequent promises with the intent to induce UE not to terminate the Agreements and to provide AdHarmonics with additional business, and in reliance upon those promises, UE did not terminate the Agreements.

66.     As a result of AdHarmonics' conduct, AdHarmonics proximately caused damages to UE in an amount to be determined at trial but in excess of this Court's jurisdictional limits.

## **PRAYER FOR RELIEF**

Wherefore, UE prays for judgment against AdHarmonics on the claims for relief alleged in its counterclaim and seeks relief as follows:

1.     An award of monetary damages in an amount to be determined at trial but in excess of $1,027,186.99;

2.     Restitution, including an award of AdHarmonics' profits;

3.     An award of attorneys' fees and costs of this action;

4.     Punitive damages; and

5.     Such other and further relief as deemed just and proper by the Court.

## JURY DEMAND

UE requests a jury trial on all issues so triable.

Respectfully submitted,

Dated:  March 14, 2016

  /s/ Seth A. Schwartz
Seth A. Schwartz (State Bar No. 650875)
DINSMORE & SHOHL, LLP
255 E. Fifth Street
Cincinnati, OH  45202
Tel:  (513) 977-8200
Fax: (513) 977-8141
seth.schwartz@dinsmore.com

Joseph S. Leventhal
(*pro hac vice application forthcoming*)
Joshua M. Heinlein
(*pro hac vice application forthcoming*)
DINSMORE & SHOHL, LLP
655 West Broadway, Suite 840
San Diego, CA 92101
Tel:  (619) 356-3518
Fax: (619) 615-2082
joseph.leventhal@dinsmore.com
joshua.heinlein@dinsmore.com

*Attorneys for Defendant and Counter-Claimant*
*Underground Elephant, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document has been filed electronically and is available for viewing and downloading through the Court's CM/ECF system.  I also certify that, on March 14, 2016, I caused a copy of the foregoing document to be served upon the following individuals, in the manner indicated:

**Via the Court's CM/ECF System**

_____

**DINSMORE & SHOHL, LLP**

By:___*/s/ Seth A. Schwartz*_____
    Seth A. Schwartz

*Counsel for Defendant and Counter-Claimant*
*Underground Elephant, Inc.*

10205899