UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EVERQUOTE, INC., f/k/a ADHARMONICS, INC., <br><br>        Plaintiff/Counterclaim-Defendant, <br><br>        v. <br><br> UNDERGROUND ELEPHANT, INC., <br><br>        Defendant/Counterclaim-Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )      CIVIL ACTION <br>      NO. 16-cv-10103-WGY |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS COUNTS IV-VII OF DEFENDANT'S COUNTERCLAIM**

In January 2014, plaintiff, EverQuote, Inc. f/k/a AdHarmonics, Inc. ("EverQuote") and defendant, Underground Elephant, Inc., entered into a Lead Vendor Agreement pursuant to which the parties agree that Underground Elephant would have the opportunity to license certain leads for consumers interested in purchasing insurance products and resell those leads to Allstate insurance agents (the "January 2014 Agreement"). In November 2014, the parties entered into a separate Lead Data License Agreement pursuant to which Underground Elephant would have the opportunity to license certain leads for consumers interested in purchasing insurance products and resell those leads to insurance carriers and agents (not limited to Allstate agents) regardless of affiliation (the "November 2014 Agreement"). It was not until after EverQuote filed its Complaint in this action against Underground Elephant for non-payment of license fees that Underground Elephant began throwing around loose accusations of "fraud," presumably in hopes of forcing EverQuote to abandon its collection efforts.

EverQuote will not abandon its collection efforts.  Under the terms of the agreements between the parties, EverQuote licensed leads to Underground Elephant; Underground Elephant had a full opportunity to review the data associated with every lead and reject leads it did not want; and Underground Elephant resold the leads it licensed from EverQuote.  EverQuote will establish in due course that it fully performed under the agreements between the parties, and that Underground Elephant's counterclaims for breach of these agreements are simply an effort to avoid its payment obligations, even as it seeks to retain the proceeds from the resale of leads licensed from EverQuote.  EverQuote moves to dismiss Counts IV-VII of the Counterclaim because Underground Elephant has failed to state a claim for violation of Cal. Bus. & Prof. Code § 17200 (Count IV); Mass. Gen. Laws c. 93A (Count V); promissory fraud (Count VI); and negligent misrepresentation (Count VII).

Underground Elephant alleges that EverQuote's representations prior to the execution of the January 2014 Agreement were "false" and that EverQuote "never intended to comply with the January 2014 Agreement and November 2014 Agreement."  (Countercl., ¶ 17).  All Underground Elephant has alleged, however, is that certain leads it licensed from EverQuote did not meet requirements supposedly agreed by the parties.  Even if this were true (and it is not), it is black letter law in California and Massachusetts that a contract dispute, without more, does not rise to the level of an unfair business practice in violation of Cal. Bus. & Prof. Code § 17200 or Mass. Gen. Laws c. 93A.  Finally, the bald assertion that EverQuote engaged in "promissory fraud" or "negligent misrepresentation" -- without the "who, what, where, or when" of the supposed misrepresentations -- does not satisfy the heightened pleading standard of Rule 9(b). For all of these reasons, and as discussed more fully below, the Court should dismiss Counts IV-VII of Underground Elephant's Counterclaim.

## ALLEGATIONS OF THE COUNTERCLAIM

Underground Elephant is a marketing technology company that claims to "use[] proprietary internal properties that target and identify consumer specifically interested in each client's service and send those customers directly to [its] client." (Countercl., ¶ 6). EverQuote is in the business of acquiring and licensing the use of certain information about consumers interested in obtaining insurance products, referred to as "leads." (*Id*., ¶ 3; November 2014 Agreement at 1).[1]

In January 2014, EverQuote and Underground Elephant entered into a Lead Vendor Agreement pursuant to which the parties agree that Underground Elephant would have the opportunity to license certain leads for consumers interested in purchasing insurance products and resell those leads to Allstate insurance agents (the "January 2014 Agreement"). (Countercl., ¶ 13). Under the terms of that agreement, EverQuote's technology platform would "ping" Underground Elephant's system with non-personally identifiable information with respect to leads meeting Underground Elephant's account parameters; Underground Elephant's system would reply to the ping by providing the price that Underground Elephant would be willing to pay for the lead; and following receipt of that price, EverQuote would then decide whether to send (or "post") the lead to Underground Elephant. (Jan. 2014 Agreement, § 2(a)). Each lead licensed by EverQuote to Underground Elephant under the January 2014 Agreement was the subject of a "ping/post" transaction.

---

[1]  Although Underground Elephant does not attach copies of the January 2014 Agreement or November 2014 Agreement to its Counterclaim, the Counterclaim makes reference to and quotes at length from these agreements. It is well established that the Court may "review documents outside of the pleadings where they are undisputed, central to plaintiffs' claims, and sufficiently referred to in the complaint or incorporated into the movant's pleadings." *In re Citigroup, Inc*., 535 F.3d 45, 52 (1st Cir. 2008). EverQuote has attached a copy of the January 2014 Agreement as <u>Exhibit A</u>, as well as copies of the November 2014 Agreement and associated Insertion Order as <u>Exhibits B-C</u>.

In November 2014, EverQuote and Underground Elephant entered into a Lead Data License Agreement pursuant to which the parties agreed that Underground Elephant would have the opportunity to license certain leads for consumers interested in purchasing insurance products and resell those leads to insurance carriers and agents regardless of affiliation (the "November 2014 Agreement"). (Countercl., ¶ 15). Like the January 2014 Agreement, the leads licensed by EverQuote to Underground Elephant under the November 2014 Agreement were the subject of "ping/post" transactions, so that Underground Elephant had the opportunity to review every lead and all information associated with each lead before deciding whether to license the data. (Nov. 2014 Agreement, § 3(a)). Each lead licensed by EverQuote to Underground Elephant under the November 2014 Agreement was the subject of a "ping/post" transaction.

After EverQuote filed its Complaint against Underground Elephant in January 2016 for non-payment of certain license fees (Dkt. #1), Underground Elephant asserted claims against EverQuote for breach of contract (Counts I-II); breach of the implied covenant of good faith and fair dealing (Count III); violation of Cal. Bus. & Prof. Code § 17200 (Count IV); violation of Mass. Gen. Laws c. 93A (Count V); promissory fraud (Count VI); and negligent misrepresentation (Count VII). (Dkt. #9). Underground Elephant claimed that EverQuote made false representations to Underground Elephant in advance of entering into the agreements between the parties, including that "[b]eginning in January 2014, [EverQuote] represented to [Underground Elephant] that it did not incentivize leads, obtain leads through rewards program, or provide duplicate leads." (Countercl., ¶ 11).

Underground Elephant also alleged that EverQuote "further represented that it complied with best practices in the online lead industry and all applicable laws, including the CAN-SPAM Act and TCPA," and that EverQuote "would provide [Underground Elephant] with high quality

leads, which [Underground Elephant] could then provide to its customers." (*Id.*)  Underground

Elephant now claims upon information and belief that "at the time [EverQuote] made these

representations, [EverQuote] knew or should have known that the representations were false."

(*Id.*)  According to Underground Elephant, "[b]ased on [EverQuote's] representations, which

were made in or about January 2014, Underground Elephant agreed to enter into a contract with

[EverQuote]." (*Id.*, ¶ 12).

## ARGUMENT

### A.    Standard Of Review.

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

survive a motion to dismiss under Rule 12(b)(6), a complaint must assert sufficient facts, that, if

accepted as true, would "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  Although a Court must accept as true all of the factual

allegations contained in a complaint, that doctrine does not apply to legal conclusions, threadbare

parroting of the necessary legal elements or allegations supported only by conclusory statements.

*Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 2d 100, 101-02 (D. Mass. 2011) citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 667-68 (2009).  Moreover, Rule 9(b) requires that "[i]n alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b).

### B.    Underground Elephant Has Not Pled An Unfair Business Practice In Violation of California Or Massachusetts Law.

Underground Elephant attempts to make this case something it is not with lurid

allegations of "fraud," but the factual allegations of the Counterclaim show that this is a simple

breach of contract dispute.  Underground Elephant alleges that "contrary to . . . the express terms

of the Agreements . . . . [EverQuote] provided . . . duplicate leads to [Underground Elephant]";

that certain leads "did not meet [Underground Elephant's] filters" because the leads contained

disputed or invalid contact data; that contrary to the parties' agreements, "lead data. . . was

incentivized"; and that certain leads were "likely the result of re-marketing or incentivizing

traffic in violation of the Agreements."   (Countercl., ¶¶ 17-20).   Under both California and

Massachusetts law, this is not enough to establish a statutory violation.

> **1.      Count IV must be dismissed because Cal. Bus. & Prof. Code § 17200 does not apply to garden variety breach of contract claims.**

The January 2014 Agreement contains a California choice of law clause, (Jan. 2014

Agreement, § 14(g)).   This Court should dismiss Count IV because it describes, at best, a breach

of contract claim, and fails to state a claim under the California Unfair Competition Law

("UCL"), Cal. Bus. & Prof. Code § 17200.   California courts have held that "[a] breach of

contract, and by extension, a breach of the implied covenant of good faith and fair dealing, is not

itself an unlawful act for purposes of the UCL."   *Boland, Inc. v. Rolf C. Hagen (USA) Corp*., 685

F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (citing P*uentes v. Wells Fargo Home Mortgage, Inc*.,

160 Cal. App. 4th 638, 645 (2008)); *see also Dillon v. NBCUniversal Media LLC*, 2013 WL

3581938 (C.D. Cal. June 18, 2013) (granting motion to dismiss UCL claim because if "a simple

breach of contract could form the basis for a [UCL] claim, then virtually every contract action

could be converted into a business tort.").

Underground Elephant is a sophisticated business entity that entered into two separate

agreements with EverQuote, and any recourse it may have is available under the terms of the

agreements it negotiated.   The UCL is not the appropriate vehicle for Underground Elephant to

assert any purported contract claim it may have against EverQuote:

> The UCL was enacted 'to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' Here the alleged victims are neither competitors nor powerless, unwary consumers, but Linear and other corporate customers in Silicon Valley; each of which presumably has the resources to seek damages or other relief . . . should it choose to do so.' . . . In these circumstances, where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, *a corporate plaintiff may not rely on the UCL for the relief it seeks*.

*Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 135 (Cal. Ct. App. 2007) (internal citations omitted and emphasis added) (affirming dismissal of UCL claim based on purported misrepresentations in contract).

Underground Elephant is not a powerless, unwary consumer; it is a sophisticated business entity that entered into certain agreements with EverQuote.  Moreover, the issue here is not competition between EverQuote and Underground Elephant, but the contractual relationship between the two parties.  Underground Elephant has not alleged any facts that would elevate this case from a breach of contract action to a UCL violation.

## 2. Count V must be dismissed because Mass. Gen. Laws c. 93A also does not apply to garden variety breach of contract actions.

The November 2014 Agreement contains a Massachusetts choice of law clause. (Nov. 2014 Agreement, § 13.9).  Like the California statutory claim, Count V for violation of Mass. Gen. Laws c. 93A should be dismissed because it describes, at best, a breach of contract claim. As a threshold matter, Underground Elephant has not identified the provision of Mass. Gen. Laws c. 93A under which it contends its claim arises (i.e. § 9 or § 11).  Rather, it merely asserts in conclusory fashion that the acts of EverQuote "constitute a pattern and/or course of conduct which is unlawful and/or unfair and therefore constitutes an unfair method of competition and/or unfair or deceptive act or practice in violation of Massachusetts General Law chapter 93A." (Countercl., ¶ 49).  At a minimum, Underground Elephant should take the time to allege a claim under a specific section of the statute before accusing EverQuote of violating the law.

In any event, Chapter 93A prohibits those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices."  Mass. Gen. Laws c. 93A, § 11.  "In the context of disputes among businesses, where both parties are sophisticated commercial players, the objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce."  *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 244 (D. Mass. 2011) (citations and quotations omitted).  It is "well established" that a breach of contract is insufficient in itself to constitute an unfair or deceptive trade practice under Chapter 93A, *Interstate Brands Corp. v. Lily Transp. Corp.*, 256 F. Supp. 2d 58, 61 (D. Mass. 2003) (citing *Ahern v. Scholz*, 85 F.3d 774, 798 (1st Cir. 1996)), and that to "prevail on a Chapter 93A claim premised on a breach of contract, the breach must be so egregious as to possess an extortionate quality that gives it the rancid flavor of unfairness." *Zurich Am. Ins. Co.*, 796 F. Supp. 2d at 244 (internal citations and quotation omitted).  "In other words, such a claim will fail if 'there was no ulterior motive, no coercive or extortionate objective.'" *Id.* (quotation omitted).  "'[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [Chapter] 93A claim is made." *Id.* at 245 (quoting *Duclersaint v. Fed. Nat'l Mortg. Ass'n*, 427 Mass. 809, 814 (1998)).  Here again, Underground Elephant has alleged a garden variety breach of contract dispute, not a violation of the Massachusetts unfair trade practices act.

### C.      Counts VI and VII Must Be Dismissed Because Underground Elephant Has Not Pled Promissory Fraud Or Negligent Misrepresentation With Particularity.

Underground Elephant generally alleges that "[p]rior to and at the time of entering into the Agreements, [EverQuote] represented to [Underground Elephant] that its services worked materially different from how they actually worked," that "[t]hese representations were made in or about January 2014," that "[a]fter entering into the Agreements, [EverQuote] continued to

represent that its services were materially different from how they actually worked," and that "[w]hen [EverQuote made these representations, it had no intention of performing consistent with them." (Countercl., ¶¶ 55-57). According to Underground Elephant, "[EverQuote made these representations with the intent to induce [Underground Elephant] to enter into the Agreements, and in reliance upon those promises, [Underground Elephant] entered into the Agreements with [EverQuote]," and that this conduct was "willful, malicious, fraudulent, and/or oppressive." (*Id*., ¶¶ 58, 60). Allegations of fraud should not be undertaken lightly or for mere strategic advantage, and these allegations, made on information and belief, fall far short of the heightened pleadings demands of Rule 9(b).

Underground Elephant asserts a claim for "promissory fraud," i.e. that it was fraudulently induced by EverQuote to enter into the January 2014 Agreement (and apparently the November 2014 Agreement, too). A claim of fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury. *See, e.g., Woods v. Wells Fargo Bank*, 733 F.3d 349, 357 (1st Cir. 2013). "A claim of fraud must also satisfy the particularity requirements set forth in Fed. R. Civ. P. 9(b), mandating 'specifics about the time, place, and content of the alleged false representations.' " *Id*. at 358 (quoting *Juarez v. Select Portfolio Servicing, Inc*., 708 F.3d 269, 279-80 (1st Cir. 2013)). *See also Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (heightened pleading standard for fraud claims requires plaintiff to allege "'the who, what, where, and when of the allegedly false or fraudulent representation.'") (quotation omitted). *See also Extreme Reach, Inc. v. Grace Hill Media*, 2015 WL 4601224, at *2 (D. Mass. July 31, 2015) (applying Rule 9(b) standard to promissory fraud claim and granting motion to dismiss because complaint did not allege the "when" and "who" of purported fraud).

Likewise, under both Massachusetts and California law, Underground Elephant's claim for "negligent misrepresentation" is subject to the heightened pleading requirements of Rule 9(b). *See, e.g., Sebago, Inc. v. Beazer East, Inc*., 18 F. Supp. 2d 70, 95 (D. Mass. 1998) ("Like fraud, a claim of negligent misrepresentation requires plaintiffs to plead reliance with particularity."); *Kelley v. Rambus, Inc.*, 384 Fed. Appx. 570, 573 (9th Cir. 2010) ("Kelley's [California] state law claims for common law fraud and negligent misrepresentation fail to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure."); *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *but see Petersen v. Allstate Indem. Co*., 281 F.R.D. 413, 418 (C.D. Cal. 2012) (rejecting *Neilson* and holding that Rule 9(b) does not apply to negligent misrepresentation claims). *See also Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1269-70 (N.D. Cal. 2014) (collecting cases and "agree[ing] with the line of cases that hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b).").

Underground Elephant has chosen to respond to a claim for non-payment by making accusations of "fraud" and "misrepresentation" against EverQuote. It should not be permitted to make these accusations in such a generalized fashion; if Underground Elephant wants to throw around words like "fraud" and "misrepresentation," then it should be required to make those allegations in a particularized fashion, and in a manner consistent with Rule 9(b) and Rule 11. Underground Elephant is attacking EverQuote's business reputation in a publicly filed document, and EverQuote is entitled to defend its reputation and know what specific representations were made, who purportedly made these representations, when they were made, and where they were

made.   Unless Underground Elephant is prepared to back these very serious allegations in the manner required by the Federal Rules of Civil Procedure, Counts VI and VII of the Counterclaim should be dismissed.

## CONCLUSION

The Court should dismiss Underground Elephant's counterclaims for violation of the California and Massachusetts unfair trade practices acts because all Underground Elephant has alleged is a breach of contract.   Moreover, the Court should dismiss Underground Elephant's counterclaims for promissory fraud and negligent misrepresentation.   If Underground Elephant is going to make these very serious allegations, it should do so with the particularity required by Rule 9(b), and in a manner consistent with its obligations under Rule 11.

Dated: April 7, 2016

Respectfully submitted,

**EVERQUOTE, INC. f/k/a ADHARMONICS, INC.**

By its attorneys,

*/s/ Brandon L. Bigelow*
Brandon L. Bigelow (BBO# 651143)
bbigelow@seyfarth.com
Alison K. Eggers (BBO# 669548)
aeggers@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA  02210-2028
Telephone:     (617) 946-4800
Facsimile:     (617) 946-4801

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2016 a true and correct copy of the foregoing was served electronically through the Electronic Case Filing System and was also sent by e-mail and first class mail to all counsel and/or parties not registered for ECF.

*/s/ Brandon L. Bigelow*
Brandon L. Bigelow